UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

Chalifoux Business Park, LLC.,   Case No.: 6:15-bk-7167-KSJ
                                 Chapter 11

     Debtor.
_____/

## MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF ALL LIENS AND REQUEST FOR PRELIMINARY HEARING

Debtor Chalifoux Business Park, LLC ("Chalifoux"), pursuant to 11 U.S.C. § 363 and F.R.B.P. 6004, moves the Court for an order authorizing the sale of real property free and clear of all liens and in support states:

### Request for Preliminary Hearing

1. Rule 6004(c) requires the Debtor to provide the date of the hearing on this Motion and a deadline to object to this Motion.

2. The Debtor asks the Court to set a preliminary hearing on this Motion to address the following:

    (a) The date on which this Motion will be decided; and

    (b) The deadline for interested parties to object to the relief requested in this Motion.

### Factual Background

3. Chalifoux filed this chapter 11 bankruptcy case on August 20, 2015 (the "Petition Date").

4. Chalifoux is a single asset real estate entity that owns real property located at 1701 S. Poinciana Blvd., Kissimmee, Florida 34758 (the "Property"). A copy of the legal description of the Property is attached as Exhibit "A".

5. The Property is encumbered by the following mortgage liens:

    (a) Mortgage and Security Agreement in favor of Colonial Bank and recorded in Official Record Book 3494, Page 1666 (the "First Mortgage"). The First Mortgage is now held by Branch Banking and Trust Company ("BB&T").

    (b) Second Mortgage and Security Agreement in favor of BB&T and recorded in Official Record Book 4732, Page 1902 (the "Second Mortgage").

The Proposed Sale

6. Chalifoux received an offer from a third party to purchase the Property. A copy of the Letter of Intent (the "LOI") is attached as Exhibit "B".

7. The major terms of the LOI are:

    (a) Purchase price- $3,700,000.00;

    (b) Closing costs- the buyer will pay all closing costs associated with the sale;

    (c) Title- the buyer will take title in the form of a trustee's deed, free and clear of all liens;

    (d) Closing date- closing will occur within 60 days of approval of this motion;

    (e) Deposit- $100,000.

8. The buyer, Noel McMahon, is an insider of the Debtor because he owns 30% of the Company's membership. However, McMahon is a passive investor and is not involved in the day to day affairs of the Debtor. He was not a member of the Company when the First Mortgage was taken out on the property. McMahon is proposing to purchase the Property in good faith and for an amount greater than its current fair market value.

9. The Debtor is informed and believes that the fair market value of the Property is less than $3,300,000. The Debtor is currently updating an appraisal on the Property and will supplement this Motion with a copy of the appraisal upon receipt.

10. The sale of the Property will be "as is", "where is", and without any representations or warranties.

## Treatment of Secured Claims

11. The principal balance due on the First Mortgage is approx. $4,600,000.

12. Because the balance due on the First Mortgage exceeds the value of the Property, the Second Mortgage is wholly unsecured.

13. Upon completion of the sale, the Debtor will turn over $3,300,000.00 to the holder of the First Mortgage.

## Procedure of Interposing a Higher Bid

14. The Debtor will receive higher bids for the Property on the same terms as defined in the LOI. If a higher bid is submitted, the Debtor will submit such bid to the Court for approval.

15. All bids shall be made, in writing, to the Debtor-in-Possession, c/o undersigned counsel, and shall be delivered by 5:00 p.m. on the date that is 10 days prior to the date set by the Court for a final hearing on this Motion (the "Bid Deadline"). The Debtor will provide notice of the Bid Deadline to all interested parties. All bids shall be accompanied by a deposit of no less than $100,000.00 in cleared funds, payable to Roman V. Hammes, P.L. Real Estate Escrow Account. In the event that an overbid is received, the Debtor will request the Court to conduct an auction of the Property at the hearing on this Motion to Sell, and to approve the most favorable bid.

16. The Debtor requests that the Order authorizing the sale contain a provision that the Buyer is a good faith purchaser entitled to the protections of Bankruptcy Code 363(m) so that the sale can be closed immediately.

## Legal Standard and Analysis

17. Sections 363(b)(1) and 1107 of the Bankruptcy Code provide that a trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 363(f) of the Code and applicable case law authorizes a trustee to sell estate property free and clear of any and all claims, liens, and encumbrances. A sale of estate assets should be approved when the trustee articulates "a reasonable business justification." *In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 981 (Bankr. N.D. N.Y. 1988); *In re Continental Airlines, Inc.,* 780 F. 2d 1223, 1226 (5th Cir. 1986). Applicable case law regarding § 363(b)(l) also requires a trustee to demonstrate that (i) accurate and reasonable notice was provided; (ii) that the price to he paid for the assets is adequate, fair and reasonable and (iii) that there is good faith. See *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

18. Section 363(f) allows the Debtor to sell property free and clear of any interest in such property of an entity other than the estate, only if –

    (1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)  such entity consents;

    (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4)  such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

19. In determining the value of a lien on property, the Court should use the fair market value of the property. *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996).

20. The minimum sales price of $3,700,000 exceeds the fair market value of the Property by at least $400,000. Accordingly, the aggregate value of the liens on the Property is less than the Purchase Price proposed by the Debtor. The holder of the First Mortgage will be paid an amount equal to the value of their lien either (a) at closing or (b) at confirmation. The balance of the purchase price will be paid to the unsecured creditor class.

21. The Debtor believes the sale of the Property will maximize the return to its creditors and enable the Debtor to wind down its affairs and dissolve. Accordingly, the sale is proposed in the Debtor's best business judgment and is in the best interest of the creditors in this case.

22. The Debtor will provide reasonable notice of the sale to the creditors in this case and will publish a notice of intent to sell the property in the Orlando Business Journal for two (2) consecutive weeks following the preliminary hearing on this Motion.

23. The proposed buyer is a bona fide purchaser acting in good faith.

<u>Relief Requested</u>

For the foregoing reasons, the Debtor asks the Court to enter an order authorizing the sale of the Property free and clear of all liens.

Respectfully submitted this 28th day of August, 2015.

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
250 East Colonial Drive, Suite 305
Orlando, FL 32801
(407) 680-6050
roman@romanvhammes.com
Proposed Attorney for Debtor

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion was filed through CM/ECF on August 28, 2015 and served on counsel for BB&T simultaneously with the filing of the Motion.

/s/Roman V. Hammes
Roman V. Hammes

That certain piece, parcel and tract of land located in OSCEOLA County, Florida, described as follows:

TRACT J, POINCIANA OFFICE AND INDUSTRIAL PARK 1, SECTION A, as filed and recorded in Plat Book 3, Pages 208 through 210, of the Public Records of Osceola County, Florida described as:
A portion of land in Section 2, Township 26 South, Range 28 East, Osceola County, Florida, more particularly described as follows:

Commence at the Northwest corner of said Section 2; thence South 00 degrees 45 minutes 17 seconds East, along the West line of said Section 2, for a distance of 1140.83 feet to a point on the South right of way of State Road 600, a 100 foot right of way; thence run South 75 degrees 56 minutes 14 seconds East, along the South right of way line of said State Road 600, for a distance of 1826.45 feet to the POINT OF BEGINNING; thence continue South 75 degrees 56 minutes 14 seconds East, along the South right of way line of said State Road 600, for a distance of 450.00 feet; thence run South 14 degrees 03 minutes 46 seconds West for a distance of 100.00 feet; thence run South 59 degrees 03 minutes 46 seconds West for a distance of 28.28 feet; thence run North 75 degrees 56 minutes 14 seconds West for a distance of 480.00 feet; thence run North 14 degrees 03 minutes 46 seconds East, for a distance of 70.00 feet to the point of curvature of a curve to the right having a radius of 50.00 feet; thence run Northeasterly, along the arc of said curve, thru a central angle of 90 degrees 00 minutes 00 seconds for a distance of 78.54 feet to the point of tangency of said curve being the POINT OF BEGINNING.

TRACT K, POINCIANA OFFICE AND INDUSTRIAL PARK 1, SECTION A, as filed and recorded in Plat Book 3, Pages 208 through 210, of the Public Records of Osceola County, Florida described as:
A portion of land in Section 2, Township 26 South, Range 28 East, Osceola County, Florida, more particularly described as follows:

Commence at the Northwest corner of said Section 2; thence run South 00 degrees 45 minutes 17 seconds East, along the West line of said Section 2, for a distance of 1140.83 feet to a point on the South right of way line of State Road 600, a 100 foot right of way; thence run South 75 degrees 56 minutes 14 seconds East, along the South right of way line of said State Road 600, for a distance of 2276.45 feet to the POINT OF BEGINNING; thence continue South 75 degrees 56 minutes 14 seconds East, along the South right of way line of said State Road 600, for a distance of 214.36 feet to the point of curvature of a curve to the left having a radius of 5779.65 feet; thence continue Southeasterly, along the South right of way line of said State Road 600 along the arc of said curve, thru a central angle of 2 degrees 19 minutes 01 seconds for a distance of 233.72 feet to a point on the East line of the West Half of said Section 2; thence run South 00 degrees 19 minutes 02 seconds East, along the East line of the West Half of said Section 2, for a distance of 450.53 feet; thence run North 87 degrees 34 minutes 33 seconds West for a distance of 1082.14 feet; thence run North 14 degrees 03 minutes 46 seconds East for a distance of 530.00 feet; thence run South 75 degrees 56 minutes 14 seconds East for a distance of 480.00 feet; thence run North 59 degrees 03 minutes 46 seconds East, for a distance of 28.28 feet; thence run North 14 degrees 03 minutes 46 seconds East for a distance of 100.00 feet to the POINT OF BEGINNING.

and

Tract "L", POINCIANA OFFICE AND INDUSTRIAL PARK I, SECTION A, according to the plat thereof, as recorded in Plat Book 3, Pages 208, 209 and 210, Public Records of Osceola County, Florida.

Exhibit "A"

# Noel McMahon

August 26, 2015

Mr. Thomas Chalifoux
Chalifoux Business Park, LLC
1254 S. John Young Parkway
Kissimmee, Florida 34741

      Re:    Three parcels of land and the improvements located thereon located at 1701 S. Poinciana Blvd., Kissimmee, Florida 34758, as more particularly described in **Exhibit "A"** attached hereto and incorporated by reference herein **(the "Property")** owned by Chalifoux Business Park, LLC **("Seller")**.

Dear Mr. Chalifoux:

The following represents the terms and conditions upon which Mr. Noel McMahon or his assigns **("Buyer")** is prepared to enter into a PSA (as defined below) for the acquisition of the Property from Seller. Collectively, Buyer and Seller are referred to as the "Parties". If the Seller is in agreement with these basic terms and conditions of this Letter of Intent ("LOI"), please indicate acceptance by signing in the space provided below.

**Purchase Price:** THREE MILLION SEVEN HUNDRED THOUSAND DOLLARS ($3,700,000) paid in immediately available funds at closing. The subject price is to be paid as outlined below. Seller shall deliver the Property free and clear of any and all existing liens and encumbrances not specifically approved by Buyer.

**Initial Deposit:** $100,000 paid within five (5) business days after the fully executed PSA.

**Purchase and Sale Agreement:** This Letter of Intent on sets forth the general business terms and conditions that will be contained in a formal Purchase and Sale Agreement ("PSA"). The PSA shall be completed on or before 15 days following the approval of the bankruptcy court which has jurisdiction over the Property. The date that the sale has been approved and the PSA fully executed shall be the "Effective Date".

**Inspection Period:** During the 30-day period following the Effective Date, (the "Inspection Period"), Buyer will have the right, at its sole cost and expense, to conduct such studies (including, without limitation, legal review of the Property, the related documentation and the status of any judicial proceedings; engineering studies; environmental tests and studies; and physical inspections) as Buyer may elect to make or obtain. Within five days after the start of the Inspection Period, Seller shall provide Buyer with all relevant or necessary information with respect to the



Exhibit B

Property which may be in Seller's, or Seller's agents', possession (collectively, "Seller's Deliverables") including, without limitation: all environmental studies or impact statements and reports; copies of existing title insurance policies, title certifications or title reports on the Property together with copies of all documents and plans referred to therein.

As long as Buyer has not provided Seller with written notice cancelling the acquisition of the Property within five business days following the expiration of the Inspection Period, then the Initial Deposit shall become non-refundable, as long as Seller remains in compliance with the terms and conditions of the Purchase and Sale Agreement.

**The Closing:** The closing date shall be no later than 15 days following the Inspection Period, if Buyer has not otherwise given notice to cancel.

**Conditions Precedent:** Buyer's contract contingencies, whose approval shall be at Buyer's sole discretion, shall include, but shall not necessarily be limited to, the following:

(a) Buyer's due diligence review of the Property,

(b) No Adverse change in the condition of the property from the date of this agreement to closing. Buyer understands that the properties are in various need of improvements and repairs and is willing to move forward on that basis. However, this offer is conditioned upon no material adverse change in the Property from the date of this Letter of Intent until closing,

(c) Determination, in Buyer's sole discretion, that no environmental hazardous waste or contamination exists which would affect the habitability, value or marketability of the Property,

(d) During the Inspection Period, Buyer has not notified Seller of its decision to terminate this Letter of Intent which will remain the sole and absolute decision of Buyer during the Inspection Period until waived or otherwise invoked,

(e) Delivery of an ALTA Title Insurance policy to the Buyer at closing from a national title company in the amount of the purchase price.

**Closing Costs:** The buyer will pay all closing costs associated with this transaction, including title insurance premiums, documentary stamps, recording fees and closing fees.

**Assignment:** This LOI and subsequent PSA may be assigned by Buyer to an affiliated entity of Buyer without consent of Seller.

If you have any questions or would like to discuss any of these terms, please feel free to contact me at the telephone number above. We look forward to speaking with you and working with you to bring this transaction to a successful conclusion.

Sincerely,

*/s/ Noel McMahon*
Noel McMahon


Agreed to and accepted this ___ day of _____, 2015:

"SELLER"


By: _____
   Name:
   Title:

## Exhibit A

## The Property

Three parcels of land approximating 35.36 acres of undeveloped land that is zoned Planned Development with a future land use of commercial. The property is located at the southeast corner of U.S. Highway 17-92 and S. Poinciana Boulevard in unincorporated Poinciana, Osceola County, Florida. The property occupies a portion of Section 2 in Township 26 South, Range 28 East, Osceola County, Florida. Property Appraiser's parcel numbers are as follows: 25-26-28-6180-000J-0010, 25-26-28-6180-000K-0010 and 25-26-28-6180-000L-0010.