**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

**In re:**

**CHALIFOUX BUSINESS PARK, LLC,**                   **Case No. 6:15-BK-07167-KSJ**

                                                    **Chapter 11**

                     **Debtor.**
_____/

**BRANCH BANKING AND TRUST COMPANY'S OBJECTION TO DEBTOR'S**
**MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF**
**ALL LIENS  AND REQUEST FOR PRELIMINARY HEARING**
**AND INCORPORATED MEMORANDUM OF LAW**

Secured Creditor Branch Banking and Trust Company, a North Carolina banking

corporation ("BB&T"), by and through its undersigned counsel, files this Objection to Debtor

Chalifoux Business Park, LLC's Motion to Sell Real Property Free and Clear of All Liens and

Request for Preliminary Hearing (the "Sale Motion") (Doc. No. 13), and states the following:

**PRELIMINARY STATEMENT**

The Debtor is boldly asking this Court for relief for which there is no precedent; that is,

to fix the value of BB&T's collateral at an artificially deflated figure, allow the Debtor to sell the

collateral to an insider for a bit more than the deflated value, and then allow the Debtor distribute

the "excess" proceeds from the sale to other insiders under a patently un-confirmable Chapter 11

plan.  As explained in BB&T's Motion for Relief from the Automatic Stay and Incorporated

Memorandum of Law (Doc. No. 10), this case is a two-party dispute containing every indicator

of bad faith relied on in the 11th Circuit.  Subsequent filings by the Debtor (including the

Debtor's Schedules) have shown that the only creditors (besides BB&T) are insiders, and only

insiders stand to benefit in this case, which reinforces the fact that this case was filed in bad faith and for an improper purpose.

However, even if this case had been filed in good faith, the Debtor's proposed sale procedures are impermissible under any accepted interpretation of 11 U.S.C. § 363 and must be rejected. Not only is the Debtor unable to meet any of the conditions in subsections 363(b) and 363(f), but the proposed sale violates the mandate of Section 363(k), which permits BB&T to credit bid the full amount of BB&T's claims at any sale of the Property. For the reasons discussed herein, the Sale Motion should be denied in its entirety.

## PROCEDURAL AND FACTUAL BACKGROUND

1. This bankruptcy case was commenced on the morning of a duly scheduled state court foreclosure sale of the Debtor's only asset, i.e., 35 acres of raw land in Osceola County, Florida (the "Property"). The purpose of this bankruptcy was to stop the foreclosure sale so that the Debtor can attempt to sell the Property to one of its members, free and clear of BB&T's liens, at a below-market price.

2. The Property is encumbered by the following liens in favor of BB&T: (i) a Final Judgment of Foreclosure dated April 27, 2015, in the amount of $9,331,365.53, plus post-judgment interest (the "Final Judgment"), and (ii) a Second Mortgage and Security Agreement (the "Second Mortgage"), which secures a Promissory Note dated January 26, 2015, in the amount of $5,406,048.46.

3. On August 28, 2015, the Debtor filed the Sale Motion (Doc. No. 13), asking this Court to approve a cash sale (the "Proposed Sale") of the Property to Noel McMahon, a 30% owner of the Debtor for $3,700,000.00. The Debtor attempts to rely on 11 U.S.C. § 363(f)(3) for authority to sell the Property, claiming that the proposed sale price exceeds the aggregate value

of all liens on the Property.  As shown below, the Debtor's interpretation of Section 363(f)(3) is flawed, and consequently, the Proposed Sale cannot be approved.

## MEMORANDUM OF LAW

### The Proposed Sale is not Authorized Under the Bankruptcy Code.

4.        "A sale of assets is appropriate if all provisions of § 363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors." *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995). The debtor has the burden of establishing compliance with 11 U.S.C. § 363, including "demonstrat[ing] that the proposed purchase price is the highest and best offer" and that the debtor diligently marketed the assets. *Id.*

5.        In order to approve the Proposed Sale, "[t]he court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e. it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-42 (Bankr. C.D. Cal. 1991) (citing *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. Del. 1987); *In re Alpha Industries, Inc.*, 84 B.R. 703, 705–06 (Bankr. Mont. 1988); *In re Alves*, 52 B.R. 353 (Bankr. R.I. 1985); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176–77 (D. Del. 1991)).  It is the Debtor's burden to establish that the foregoing requirements are satisfied for approval of a sale outside the ordinary course of business. *See Wilde Horse Enterprises*, 136 B.R. at 841-42 (Bankr. C.D. Cal. 1991).

6.        Here, the Debtor has failed to establish any of the prerequisites to this Court approving the Proposed Sale under Section 363(b). First and foremost, the cannot show that the sale is in the best interest of the estate. The Debtor argues that the Proposed Sale is in the best

interests of the estate because it will maximize the return to creditors and enable the Debtor to wind down its affairs and dissolve. *See* Sale Motion ¶ 21. However, the Debtor has no affairs to wind down other than returning a few cows borrowed from an insider in order to qualify for agricultural tax treatment. Moreover, and despite the Debtor's hopes and aspirations, the Proposed Sale will not generate any funds for the Debtor's estate or its unsecured creditors. In fact, just as would occur outside of bankruptcy, all of the proceeds of the Proposed Sale must go to satisfy the liens of secured creditors. At the same time, the Proposed Sale is increasing the administrative costs to the estate with no corresponding benefit. These costs could be wholly avoided by the Debtor simply turning the Property over to BB&T, or agreeing to provide BB&T stay relief to complete the foreclosure sale in state court. Either alternative would be substantially more cost-effective for the estate because, as explained above, the Debtor's estate does not stand to receive any benefit from the Proposed Sale.

7.      Section 363(m) requires that a sale be in "good faith." 11 U.S.C. § 363(m). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986).

8.      A debtor is a fiduciary to its creditors. *Embrace Sys. Corp.*, 178 B.R. at 124. The duties of a debtor in the context of a section 363 sale are summarized as follows:

> Under the duty of loyalty, the fiduciary must refrain from self-dealing with the assets of the entity to which the duty is owed, or otherwise acting in self-interest. Inherent in the fiduciary relationship is the prohibition against self-dealing. This duty is often brought into question when the fiduciary participates on both sides of a transaction.

*In re Schipper*, 109 B.R. 832, 835 (Bankr. N.D. Ill. 1989) (quotations omitted).

9.      The Proposed Sale is not an arms' length transaction. Sales to insiders such as Mr. McMahon are subject to higher scrutiny because of the opportunity for abuse. *In re Tidal Constr. Co.*, 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009). This higher scrutiny requires a showing that the assets are being sold for the highest price attainable. *Id.* (citing *In re Mallory Co.*, 214 B.R. 834, 837 (Bankr. E.D. Va 1997)).

10.     The Sale Motion fails to adequately describe any marketing process that culminated in the Proposed Sale. If the Debtor truly intended to maximize the return from a sale of its assets, it would have proposed a properly marketed auction, at which all interested parties can participate, including BB&T by way of credit bid. However, the Debtor is not interested in selling the Property for the best price; the Debtor is interested in selling the Property to an insider, Noel McMahon, at a previously agreed-upon price.

11.     The Proposed Sale's procedural inadequacies underscore its non-compliance with 11 U.S.C. § 363. The Debtor provides no indication that it has actively marketed the Property in order to obtain the highest and best price for it, opting instead to hand the Property to an insider. *Tidal  Constr. Co.*, 446 B.R. at 624; *Embrace Sys. Corp.*, 178 B.R. at 127 (refusing to approve sale when there was no competitive bidding).

12.     The Debtor has not shown that the purchase price represents the highest and best price for the Property. Instead, the Debtor has accepted and relies upon an inherently flawed appraisal of the Property (commissioned and paid for by another insider), which underscores that the Debtor is not vigorously bargaining in good faith on behalf of its creditors. (*See* Notice of Filing Appraisal Exhibit in Support of Motion to Sell, Doc. No. 27).

13.     The Sale Motion admits that the proposed buyer is an insider, but attempts to gloss over this glaring conflict of interest by explaining that Mr. McMahon was a "passive

investor," who was not involved in the Debtor's day-to-day affairs, and is offering to pay significantly more than the Property's current fair market value (as determined by the Debtor).

14.    The fact that Mr. McMahon is purchasing the Property for $3,700,000.00 contradicts the Debtor's self-serving appraisal of the Property at $2,900,000.00[1]. If it is true that, as the Debtor claims, the Property is worth only $2,900,000.00, then the Proposed Sale is irrational from Mr. McMahon's perspective. The Debtor would have this Court believe that an insider is voluntarily purchasing Property for $800,000.00 more than its fair market value because… well, actually, the Debtor doesn't explain why Mr. McMahon is willing to pay such a premium for the Property. Nor does the Debtor explain why Mr. McMahon would not choose to purchase the Property at the foreclosure sale scheduled in state court, given no rational lender would turn down a foreclosure sale bid for nearly $1 million more than the collateral would bring on the open market? The answer, of course, is that Mr. McMahon does not make irrational business decisions and the Appraisal is a self-serving, conclusory and woefully inadequate demonstration of the value of the Property that cannot be relied upon.

15.    Because the Property wasn't *independently* appraised, or marketed in any way, there is no basis for any finding that Mr. McMahon is providing sufficient value for the Property, a failure that is fatal to a finding of good faith. *Abbotts Dairies*, 788 F.2d at 149; *In re Country Manor,* 172 B.R. 217, 221 (Bankr. N.D. Ohio 1994) (purchaser did not act in good faith, and sale of real estate was denied when the real estate was "neither advertised nor placed upon the real estate market"); *Tidal Constr. Co.*, 446 B.R. at 624 (sale could not be approved when the debtor did not demonstrate that the proposed purchase price was the highest and best price).

---

[1] Although McMahon's Letter of Intent to purchase the Property was in the Debtor's possession well before the Appraisal was completed, the Appraisal states that the Appraiser was unaware of any contracts for sale of the Property (Doc. 17-1 at p. 9). Naturally, had the appraiser been aware of a cash offer to purchase the Property for $3.7 million, it would have necessarily been considered in evaluating the Property.

16.     For the reasons set forth above, the Proposed Sale is not in the best interest of the estate, and consequently, not a valid exercise of the Debtor's business judgment. The Proposed Sale to Mr. McMahon pursuant to the Sale Motion is fundamentally conflicted, not in good faith or negotiated at arms-length, unfair to the Debtor's creditors (BB&T), and simply fails to pass the higher scrutiny required for sales to insiders under section 363. Accordingly, the Proposed Sale cannot be approved under Section 363(b) of the Bankruptcy Code.

### The Proposed Sale violates 11 U.S.C. § 363(f) and Thus Cannot be Free and Clear of BB&T's Liens.

17.     The Proposed Sale cannot be free and clear of BB&T's liens because the Proposed Sale satisfies none of the five bases contained in Section 363(f) that enable a Chapter 11 debtor-in-possession to sell property of the estate free and clear of liens, claims, encumbrances, and interests.

18.     Pursuant to Section 363(f), the Debtor can only sell the Property free and clear of liens, claims, encumbrances, and interests if one of the following is satisfied:

> (1)   applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2)   such entity consents;
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)   such interest is in bona fide dispute; or
> (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(k); *see also In re Levitt & Sons, LLC*, 384 B.R. 630 (Bankr. S.D. Fla. 2008).

19.     Here, not one of the bases is satisfied, and thus the Debtor cannot sell the Property free and clear of BB&T's liens.  The Sale Motion glosses over this issue and utterly fails to establish any basis for authorization of the Proposed Sale under Section 363(f).  The only

argument that the Debtor makes is an unsupported[2] and generalized statement that the Court should use the fair market value of the Property in determining the value of a lien on the Property, followed by a conclusory statement that the "minimum sale price exceeds the fair market value of the Property at least $400,000.00." It is telling that the Debtor provides no analysis or legal argument, and simply concludes that the sale is proper. It is not.

20.     No applicable non-bankruptcy law permits the Proposed Sale free and clear of BB&T's Judgment lien and Second Mortgage lien, and BB&T has not consented to the Proposed Sale. Subsections (f)(1) and (f)(2) thus are not satisfied.

21.     Under subsection (f)(3), a sale free and clear of liens may only take place outside of a plan confirmation if the sale price is greater than the face value of the liens against the property. *See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. BAP 2008) (citing *Richardson v. Pitt County (In re Stroud Wholesale, Inc.)*, 47 B.R. 999, 1002 (E.D.N.C. 1985), *aff'd mem.*, 983 F.2d 1057 (4th Cir. 1986); *Scherer v. Fed. Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821 (N.D. Ill. 1993); *In re Perroncello*, 170 B.R. 189 (Bankr. D.Mass. 1994); *In re Feinstein Family P'Ship*, 247 B.R. 502 (Bankr. M.D. Fla. 2000).

22.     Though some courts have interpreted Subsection (f)(3) as permitting a free and clear sale of liens that are not supported by the value of the collateral on the grounds that the "the aggregate value of all liens on such property" can never exceed the value of the collateral, *see, e.g. In re Beker Indus. Corp.*, 63 B.R. 474 (Bankr. S.D.N.V. 1986), this reading makes nonsense of Subsection (f)(3). In the case of over-encumbered property, the sale price will always be equal

---

[2] The Debtor pin cites the case of *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996). This case is factually and legally irrelevant to the instant case. In fact, nowhere in the *Leckie Smokeless* case does the court discuss the valuation of any liens or the fair market value of any property.

to, rather than greater than, the aggregate economic value of the liens on the property. *See In re Canonigo*, 276 B.R. 257, 262-263 (Bankr. N.D. CA 2002); *In re PW, LLC*, 391 B.R. at 40.

23.     Unlike the "economic value" approach, "face amount" approach is "consistent with the legislative history and the plain language of the statute." *In re Canonigo*, 276 B.R. at 259-60 (citing 3 COLLIER ON BANKRUPTCY, ¶363.06[4][a] at 363- 47 (15th ed. 2001)). Collier's further states that the contrary interpretation would make section 363(f)(3) a "loophole," permitting a trustee or debtor to avoid the requirements of section 363(f)(5) through the use of subsection 363(f)(3). *Id.*   The *Canonigo* court further noted that the Epstein Treatise similarly endorses a "face value" approach to subsection (f)(3). *Id.* at 260 (citing David G. Epstein, et al., Bankruptcy § 4-7 at 402 (West Publishing Co. 1992)).

24.     As noted by the court in *Stroud Wholesale* in its interpretation of Subsection (f)(3), requiring that the sale price exceed the face value of all liens against the subject property is consistent with the "well-established rule that the bankruptcy court should not order the sale of property free and clear of interests and liens unless the court is satisfied that the sale proceeds will fully compensate the secured lienholders and produce some equity for the estate." *In re Stroud Wholesale*, 47 B.R. 999, 1002 (E.D.N.C. 1985) (citing *Matter of Riverside Investment Partnership*, 674 F.2d 634 (7th Cir. 1982) and 2 COLLIER ON BANKRUPTCY, ¶ 363.07, at 363-27 (15th ed. 1980)). In other words, the estate has no business selling property over the objection of a secured creditor when it is the secured creditor, and not the estate, that has an interest in the proceeds of the sale.

25.     Here, the Proposed Sale price is $3,700,000.00, which is far less than the aggregate amount of BB&T's Final Judgment lien and the Second Mortgage.  Accordingly, the sale is not authorized under Subsection (f)(3).

9752827 _1 122734.0418

26.     Likewise, there is no factual or legal dispute as to the validity of the underlying debt supporting the Final Judgment. The Final Judgment entered against the Debtor renders any argument the Debtor may have had regarding liability moot.  Nor is the lien of the Second Mortgage subject to a bona fide dispute, and consequently, the Proposed Sale is not authorized under Subsection (f)(4).

27.     Finally, the Debtor has not offered any explanation as to how BB&T could be compelled to accept less than a full monetary satisfaction on account of its liens in a legal or equitable proceeding and BB&T is unaware of any such 'legal or equitable proceeding.' Consequently, the Proposed Sale is not authorized under Subsection (f)(5).

28.     Based upon the foregoing analysis, it is clear that the Proposed Sale fails to satisfy any of the five bases contained in Section 363(f), and consequently, that the Proposed Sale cannot be free and clear of BB&T's liens.

### The Proposed Sale violates 11 U.S.C. § 363(k)

29.     Finally, even if the Court were to find the Proposed Sale is authorized under Section 363(f), the Proposed Sale cannot be approved because the sale procedures proposed in the Sale Motion violate Section 363(k).

30.     Section 363(k) provides a nearly absolute right for secured creditors to credit bid the full face value of their liens at any sale under Section 363(b).  *See In re SubMicron Sys. Corp.,* 432 F.3d 448, 459-60 (3d Cir. 2006) ("It is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)."). *See also In re SunCruz Casinos, LLC*, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003) ("[T]he plain language of [section 363(k)] makes clear that the secured creditor may credit bid its entire claim, including any unsecured deficiency portion thereof." (emphasis in original)); *In re Morgan House Gen.*

*P'ship*, Nos. 96-MC-184 & 96-MC-185, 1997 WL 50419, at *1 (E.D. Pa. Feb.7, 1997) (holding that secured creditors may bid "to the extent of [their] claim" under § 363(k)); *In re Midway Invs., Ltd.*, 187 B.R. 382, 391 n. 12 (Bankr. S.D. Fla. 1995) ("[A] secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof" (citing legislative history) (alteration in original) (internal quotation marks omitted)); *In re Realty Invs., Ltd. V*, 72 B.R. 143, 146 (Bankr. C.D. Cal.1987) (same); *see also Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC* (*In re WDH Howell, LLC*), 298 B.R. 527, 532 n. 8 (D. N.J. 2003).

31.     BB&T's right to credit bid can only be denied if the Court finds there is cause to prohibit credit bidding.  However, there are no facts or circumstances in this case that would support a finding of cause.  Accordingly, the Sale Motion must be denied because it fails to preserve BB&T's right to credit bid at the Proposed Sale of the Property as required by Section 363(k).

WHEREFORE, Branch Banking and Trust Company respectfully requests this Court enter an Order denying the Debtor's Motion to Sell Property Free and Clear of All Liens, granting BB&T immediate relief from the automatic stay, waiving the 14-day period in Rule 4001(a)(3), and granting such other relief that is appropriate.

Respectfully submitted,

**ROETZEL & ANDRESS**

/s/ *David J. Lienhart*___
W. Glenn Jensen
Florida Bar No. 0126070
Alan J. Perlman
Florida Bar No. 826006
David J. Lienhart
Florida Bar No. 0034640

P.O. Box 6507
Orlando, FL 32802-6507
Phone: (407) 896.2224
Fax:    (407) 835.3596
gjensen@ralaw.com
aperlman@ralaw.com
dlienhart@ralaw.com
**COUNSEL FOR BRANCH BANKING AND**
**TRUST COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically or by U.S. Mail this 21st day of September, 2015, to the following:  Debtor's Attorney: Roman V. Hammes, Roman V. Hammes, P.L., 250 East Colonial Drive, Suite 305, Orlando, FL 32801; and the Office of the United States Trustee – ORL, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801.

/s/ *David J. Lienhart*_____
David J. Lienhart, Esq.